## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MARY VAUGHN,           }
                          }
     Plaintiff,           }
                          }
     vs.                    }         **CASE NO. CV 04-B-3550-S**
                          }
**FORTIS BENEFITS INSURANCE**     }
**CO.,**                        }
                          }
     Defendant.      }

## MEMORANDUM OPINION

Plaintiff Mary Vaughn, a former employee of Blue Cross Blue Shield of Alabama, Inc., filed this action under section 1132(a)(1)(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Vaughn claims that she was wrongfully denied long-term disability ("LTD") benefits pursuant to her employer's group long-term disability insurance policy (the "Policy"). The Policy was underwritten by defendant Union Security Insurance Company, formerly known as Fortis Benefits Insurance Company ("Union Security"). The action is now before the court on Union Security's motion for summary judgment.[1]

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff. Although the court has made some minor changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n. 46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as

Union Security paid Vaughn LTD benefits for the maximum of two years under the terms of the applicable LTD policy since Vaughn's disabling condition was classified as a <u>mental</u>/nervous condition under the policy.  Vaughn also claims that she has a <u>physical</u> disability that entitles her to benefits beyond the two year maximum (the policy's two year maximum does not apply to physical disabilities).  Upon consideration of the pleadings, evidentiary submissions, briefs, and oral arguments by counsel for the parties at the hearing on this matter, the Court concludes that Union Security's decision to deny Vaughn's claim for a physical disability was correct, reasonable, and not tainted by self-interest.  Therefore, Union Security's Motion is due to be granted, and all claims against Union Security are due to be dismissed with prejudice.

## I.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be entered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the

---

to the appropriate outcome.  Counsel drafted the opinion according to the express instructions of the court as to its contents.  These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument.  Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. Factual disputes that are irrelevant or unnecessary are not material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## II.   Summary of Facts

### A.   Blue Cross's Group LTD Policy

Union Security provided LTD insurance to Blue Cross for the benefit of its employees as part of Blue Cross's employee welfare benefit plan, as that term is defined by ERISA. The contract of insurance between Blue Cross and Union Security provides as follows, in relevant part:

**Insurance Provided**

If you become *disabled* while insured under the *policy*, we will pay long term disability insurance benefits if you satisfy the *qualifying period*. We will continue to pay benefits during your *disability*, but not beyond the Maximum Benefit Period. Any benefits are subject to the provisions of the *policy*.[2]

*Disability or disabled* means that in a particular month, you satisfy either the Occupation Test or the Earnings Test, as described below. You may satisfy both the Occupation Test and Earnings Test, but you need only satisfy one Test to be considered *disabled*.

---

[2]   *See* Exhibit A to Declaration of Tom Vargo at Fortis-0348. Both parties refer to the claim file (or administrative record) relating to Vaughn's disability claim found at Exhibit A to the Declaration of Tom Vargo by reference to the Bates stamp number on each page. Accordingly, all subsequent references to "Fortis-____" are to the page number(s) of documents collected at Exhibit A to the Declaration of Tom Vargo in Union Security's evidentiary submission.

3

**Occupation Test**

If you are a *covered person* in Class I:[3]

- during a *period of disability* (including the *qualifying period*), an *injury*, sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your regular occupation.

(Fortis-0338).

*Material duties* means the sets of tasks or skills required generally by employers from those engaged in a particular occupation.  One *material duty* of your regular occupation is the ability to work for an employer on a *full-time* basis as defined in the *policy*.

(Fortis-0340).

*Qualifying period* means the length of time during a *period of disability* that you must be *disabled* before benefits are payable. . . .

(Fortis-0341).

**Authority**

We [Union Security] have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy.  All determinations and interpretations made by us are conclusive and binding on all parties.

(Fortis-0355).

The material duties of Vaughn's occupation as a Manager were as follows:

1) Be able to work for an employer on a full time basis as defined in the policy.
2) Plan, direct, and coordinate activities of a department, area or function of an

---

[3] Vaughn was a Class I employee, defined by the policy as "Class I – Each active, *full-time* exempt employee of the *policyholder* . . . who is (i) working in the United States of America and (ii) earning $60,000 or more annually, except any temporary or seasonal workers." (Fortis-0344).

> organization.
> 3)   Review, analyze and/or prepare financial and activity reports, budgets, or other information.
> 4)   Plan, develop, interpret, and/or implement policies, procedures, objectives and goals.
> 5)   Analyze and resolve problems.
> 6)   Confer with management and other administrative personnel.

(Fortis-0456).

B.   The Initial Claim for LTD Benefits

On September 5, 2001, Blue Cross submitted an application for LTD benefits for Vaughn under the Blue Cross Plan. (Fortis-0917). The application indicates that Vaughn worked from July 1, 1991 to June 7, 2001, five days per week for eight hours per day. (*Id*.). In the section asking about the nature of her condition, Vaughn cited the automobile accident that she had on March 3, 2001. (*Id*.).

On March 3, 2001, Vaughn was in an automobile accident in which Vaughn's 4-door GMC Suburban was rear-ended by a Toyota Corolla. (Fortis-0361-0362). The police report states that Vaughn's Suburban was not disabled and did not have to be towed from the scene. (*Id*.). Vaughn returned to work following the March 3, 2001 accident and continued to work another three months through June 7, 2001. (Fortis-0918).

Two attending physicians' statements accompanied Vaughn's application for LTD benefits. (Fortis-0922-0925). One statement was from Dr. Richard Ince, a psychologist, who had diagnosed Vaughn as having Post Traumatic Stress Disorder (PTSD) arising from the March 3, 2001 automobile accident. (Fortis-0924-0925). The other statement was

from Dr. Trey Lott who stated that Vaughn had back and hip pain, which prevented her from sitting for extended periods of time.  (Fortis-0922-0923).

On September 25, 2001, Penny Schultz, a Benefit Specialist employed by Union Security, acknowledged receipt of Vaughn's claim for LTD benefits and stated that a final determination was pending receipt and review of medical records from various providers. (Fortis-0878).  On October 23, 2001, Ms. Schultz sent Vaughn another letter stating that Union Security was still waiting to receive medical records from certain providers before it could make its decision.  (Fortis-0827).

On November 7, 2001, Christine O'Brien, R.N., B.S.N., a Union Security employee, reviewed the records relating to Vaughn's alleged <u>physical</u> condition.  Portions of the summary from her review are below:

**Diagnostic Findings**

Lumbar MRI scan report 5-25-01 reported lumbar degenerative changes, but no encroachment on the spinal cord or nerve roots and no herniated disks.

\*       \*       \*

**Discussion**

The APS [Attending Physician Statement] does not contain any physical diagnoses. Lumbar facet syndrome and myofascitis were reported on 6-21-01, but are not valid diagnoses because these do not carry a pattern of medical information and known recovery expectation or prognosis.  Facet syndrome is a collection of symptoms (vague, undefined and unsubstantiated complaints attached to an area or anatomical structure) and does not contain proof that a valid injury exists.  Myofascitis refers to inflammation of muscle, nerve and fibrous tissue and these are not related to trauma (injury).  Migratory (moving) pain complain[t]s are not consistent with any known musculoskeletal pathology and are not consistent with a definable injury.  Thus,

accident assessment and injury diagnosis are not contained in the available medical records. The records for physical care do not show what changed around 6-7-01, but narcotic analgesic was first prescribed on 5-28-01. Of import is that 20 narcotic pills lasted five months. The weekly anesthetic injections started on 3-9-01 and continued on a near weekly basis through 10-17-01, but the rationale is unclear. There was no evidence of radiculopathy (nerve irritation) or surgical findings. In summary, the cause of multiple pain complaints could not be explained on a physical basis.

Physical R/L [restrictions/limitations] were reportedly based on inability to sit. Of import is that both the job and driving require sitting. Diagnostic testing did not explain the source of pain and there were no documented physical signs to explain or support the pain complaints. While spasms (muscle tenseness) and trigger pain points were reported, these are less reliable than physical exam signs, which are out of the control of the patient. It may be that psych limitations were preventing RTW [return to work], especially in light of the severe psych limitation rating and physical therapist's documentation of "car accident dreams," drug overdose information and the focus on breathing exercises in physical therapy.

\*     \*     \*

**Conclusion**

Based on available medical records, physical limitations preventing RTW own occ [return to own occupation] are unclear. Chronic pain symptoms were reported in 1997 [4 years prior to the car accident]. It is unclear what physical disease process caused the pain symptoms. At this time, it is unclear if the symptoms meet Value Option criteria [which means unclear whether psychiatric limitations are disabling].

(Fortis-0723-0726).

On November 14, 2001, Patricia Neubauer, Ph.D., a Union Security employee,

reviewed the psychiatric aspects of Vaughn's claim and spoke with Dr. Richard Ince,

Vaughn's psychologist, who had diagnosed her with PTSD. (Fortis-0717-0719). Dr.

Neubauer did not disagree with Dr. Ince's conclusion that Vaughn was limited by PTSD.

(*Id*.).  Dr. Neubauer further agreed with Dr. Ince that Vaughn's anxiety should be stabilized in the near future, and she could return to work.  (*Id*.).

On November 15, 2001, Union Security informed Vaughn that it had approved her claim for LTD benefits based on a mental/nervous condition (PTSD).  (Fortis-0707-0709). Union Security treated June 7, 2001 as the onset date, which was the first day that Vaughn said she could not work due to her condition.  (Fortis-0707).  Following a three-month qualifying period after the onset date, Vaughn was entitled to LTD benefits effective September 7, 2001.  (*Id*.).  Union Security informed Vaughn that she would receive $4,263.00 each month while her disability continued, for a maximum period of two years, since her disabling condition was classified as a mental/nervous condition under the policy.  (*Id*.).  Union Security quoted the following language from the policy:

Alcoholism, Drug Addiction, Chemical Dependency, and Mental Illness

We pay only a limited benefit for periods of disability for alcoholism, drug addiction, chemical dependency, and mental illness.  The Maximum Benefit Period for all such periods of disability is 24 months.  This is not a separate maximum for each such condition, or for each period of disability, but a combined maximum for all periods of disability and for all of these conditions. . . .

(*Id*.).

On December 12, 2001, Vaughn submitted an attending physician's statement from Judy McDanal, M.D., dated December 10, 2001.  (Fortis-0695-0698).  In her functional assessment, Dr. McDanal stated:

No FCE [Functional Capacity Evaluation] or Impairment Rating has been done. However, patient has chronic pain in low back and hip.  The pain is constant

8

whether she is sitting, standing or reclining.  It affects her ability to concentrate, make decisions, handle conflict and stress, and remember.

(Fortis-0696).

Dr. Trey Lott submitted a Supplementary Report, dated June 5, 2002, which asks for the treating physician to fill out his assessment of the claimant's impairment, work capabilities, and prognosis.  (Fortis-0603-0604).  In his report, Dr. Lott noted that Vaughn was in constant pain, but he failed to provide any restrictions.  (*Id.*).  Instead, Dr. Lott stated, "[Vaughn] needs FCE (functional capacity evaluation) and impairment rating to fill out this form [Supplementary Report]."  (*Id.*).

In March 2003, Craig Heligman, M.D., reviewed Vaughn's claim file to determine if Vaughn was <u>physically</u> disabled.  (Fortis-0484-0488).  Dr. Heligman concluded that, physically, Vaughn was able to perform sedentary work with the ability to change positions at will.  (*Id.*).  Portions of Dr. Heligman's report are set out below:

> The clinical examinations and imaging studies show no evidence of neural impingement or structural changes that would explain the claimant's symptoms. The degenerative changes noted are consistent with the claimant's age . . . The alleged inability to sit for prolonged time periods without low back symptoms is common in the uninjured population and can not be used as an indicator for work capacity.  The claimant's occupation would allow her to perform work in any position which she deems comfortable.  Prolonged sitting is never recommended for any person performing office based or administrative type activities and frequent positional changes every 15-30 minutes is the best behavioral recommendation for all administrative workers . . .

> The claimant has nonspecific muscle related pain symptoms without evidence of objective findings that would be considered to be a result of the motor vehicle accident on 3/3/01 . . .

**CONCLUSION**

> The available medical information supports the conclusion that the claimant would be able to meet the physical demands of her sedentary occupation . . .

(Fortis-0487).

On July 3, 2003, Union Security informed Vaughn of the denial of her claim for disability based on a <u>physical</u> condition.  (Fortis-0446-0453).  Union Security stated that Vaughn's LTD benefits for her PTSD would end September 6, 2003 pursuant to the policy's two-year maximum for benefits for a mental/nervous condition.  (*Id*.).

C.      <u>The ERISA Administrative Appeal</u>

Vaughn appealed on July 25, 2003 and submitted additional medical records.  (Fortis-0422-0423).  Vaughn claimed that, in addition to her PTSD, she was <u>physically</u> disabled due to intense and persistent pain throughout her entire body.  (*Id*.).

Daniel Zimmerman, M.D., an independent consulting physician, reviewed Vaughn's claim file on September 11, 2003 at Union Security's request.  (Fortis-0412-0414).  Excerpts from Dr. Zimmerman's report are below:

> This individual has not had any musculoskeletal diagnoses confirmed by a thorough physical medicine [sic] or orthopedic assessment which would validate the diagnoses of fibromyalgia, fibrositis, or myalgia as consequences of the motor vehicle accident on June 7, 2001.[4]

> The diagnosis of fibromyalgia has not been made with an effort to rule out the possibility of a connective tissue disease process.  The trigger points associated with a diagnosis of fibromyalgia have never been confirmed or refuted.  This

---

[4]  The actual date of Vaughn's automobile accident was March 3, 2001.  (Fortis 0361-0362).

diagnosis has been offered without validation.

*     *     *

Diagnostic studies have shown no significant abnormalities.  She [Vaughn] was evaluated as requested by Trey D. Lott, D.C., with an x-ray of the left hip on May 25, 2001.  That x-ray, interpreted by Robert Eichelberger, M.D., was stated to be negative for fracture, dislocation, or significant degenerative change.

An x-ray of the lumbosacral spine was performed.  This individual has claimed that she has severe pathology at the lumbar level.  The x-ray report of the lumbar spine dated May 25, 2001 showed evidence of lower lumbar degenerative change, L5 spondylolysis, and minimal spondylolisthesis of L5 on S1.

As was pointed out by Dr. Heligman who reviewed this file on March 31, 2003, such changes on the x-ray of the lumbosacral spine are consistent with the degenerative changes that occur as a person ages.  Such changes are not necessarily pathologic.

*     *     *

This individual [Vaughn] in a letter to Fortis personnel of July 25, 2003 indicated that Dr. Lott's records show the objective progression of her physical condition and physical disability.  She indicated that Dr. Lott's records have objective findings observed during weekly physical examinations.

Dr. Lott's records do not show objective signs or diagnostic studies.  Dr. Lott's records discuss symptoms reported by [Vaughn].  Dr. Lott's records never discuss signs or diagnostic studies.  The records from an associate in his office, Judy McDanal . . . likewise show no indication of signs being reported.  The records from these treating sources exclusively focus on symptoms as reported by this individual.

This individual did come under the care of Virginia A. Campbell, M.D. . . These progress notes from this source do not discuss objective physical examination findings . . .

This individual claimed to be significantly limited in her activities of daily living.  She, on the other hand, reported that she is able to drive to appointments.  She indicated at home that she takes care of herself and spends a great deal of time in a

reclining chair.  She indicated that she has difficulty forcing herself to do activities.  She continued to report what must be characterized as depressive symptoms.

In consideration of this appeal, it must be stated that the musculoskeletal conditions that have been claimed to be present in this individual are not validated by signs or diagnostic studies . . .

RECOMMENDATIONS:  As was the opinion of Dr. Heligman . . . this individual is medically able to perform all levels of sedentary work considering the musculoskeletal diagnoses found in this file.  She is not, considering signs and diagnostic studies, precluded from carrying out work activities such as she performed pre-dating the accident.

To reiterate, this individual is capable of sedentary work activity considering only medical diagnoses (not psychiatric diagnoses) eight hours per day, five days per week, i.e., on a full time basis.

(Fortis-0412-414).

On September 30, 2003, Union Security sent Vaughn a letter denying her first appeal of Union Security's decision to deny her claim for LTD benefits based on an alleged physical disability.  (Fortis-0401-0408).  The letter set out Union Security's reasons for its denial, including the medical records that were obtained and assessed.  (Fortis- 0401-0403).

On October 8, 2003, Vaughn (through her attorney) requested another appeal.  (Fortis-0398).  Union Security subsequently obtained additional medical records from Dr. Lott (Vaughn's treating physician) for the period of January 16, 2003 to January 14, 2004, which were reviewed by Dr. Zimmerman on March 16, 2004.  (Fortis 0300-0301).  Dr. Zimmerman concluded that the additional records did not change his September 11, 2003

opinion that Vaughn could work full-time at a sedentary job:

> DISCUSSION:  The new medical information since the review of this file that I [Dr. Zimmerman] made on September 11, 2003 provides no basis to modify the medical decision, considering the available signs, symptoms, and diagnostic studies, that this individual [Vaughn] . . . is capable of sedentary activity considering only medical [*i.e.*, physical] diagnoses.  She is able to work at a sedentary level of exertion eight hours per day, five days per week, i.e., on a full time basis.
>
> The information since the review of this file on September 11, 2003 provides no basis to reduce this individual's residual functional capacity to less than sedentary work capabili**t**y.

(Fortis 0300-0301).

The Appeals Committee first met to consider Vaughn's appeal on April 13, 2004.

(Fortis-0294).  During this meeting, the Committee decided to request a two-day

Functional Capacity Evaluation ("FCE") before making a final decision.  (*Id.*).

In response to Union Security's request for an FCE, counsel for Vaughn provided

Union Security with a report from an Independent Medical Exam ("IME") that Vaughn

had performed by Dr. Bradley Goodman on February 2, 2004 at the request of Vaughn's

automobile insurance carrier (relating to a lawsuit arising out of Vaughn's automobile

accident).  (Fortis-0272-0276; Fortis-0197-0199).  As part of the IME, Dr. Goodman

answered several questions posed by the automobile insurance carrier.  (Fortis-0199).  Dr.

Goodman stated in response to certain questions as follows:

> 9.    My prognosis for the patient [Vaughn] is guarded.  It is difficult for me to predict her future function.  **Physically, I would not restrict her.  Her functional limitations are more psychological in nature**, in that by her history she has poor ability to manage her pain.

13

10.     I do believe the patient suffered permanent impairment as a result of the motor vehicle accident on 3-2-2001. I would estimate her impairment at approximately 6% of the cervical and lumbar regions. Note this is an impairment rating and not a disability rating.

11.     It is difficult for me to determine if the patient is able to return to pre-loss activity levels including occupational duties. **Physically, I would not restrict her from physical activity.** Again, she is mostly self-limited due to her ability to cope or deal with her level of pain. It is hard for me to figure out where one draws the line in terms of function. For example, she is able to operate a motor vehicle, at least on an occasional basis, and she is independent as far as I can tell with all other activities of daily living.

(*Id*.) (emphasis added). Dr. Goodman also noted that patients with the type of physical trauma suffered by Vaughn generally recover within three to six months of the accident (Vaughn's accident was on March 3, 2001). (Fortis-0199).

Union Security's Investigative Services Unit performed surveillance of Vaughn from May 2, 2004 through May 7, 2004.[5] During the surveillance, Vaughn was observed running to her car at a gas station, lifting office equipment and taking it from her car inside a building (including that she held the equipment in one hand while opening the door with her other), driving for twenty to thirty minute intervals, driving her children to and from school, shopping for groceries several times over consecutive days (including carrying groceries), and sitting in her car reading a book. (Fortis-0001, 0242-0245).

Vaughn underwent a Functional Capacities Evaluation ("FCE") on July 6-7, 2004.

---

[5]  The surveillance videotape is part of the administrative record and is located at Fortis-0001. A narrative description of the surveillance is located at Fortis-0242-0245. Vaughn is the second woman that appears on the tape; Vaughn drives a white minivan on the tape. The court personally viewed the videotape.

(Fortis-0224-0234).  The independent examiner concluded that Vaughn could perform at the "light" level of work for an eight-hour day.  (Fortis-0224-0225).  The "light" level of work is more strenuous than sedentary work, (Fortis-0225), which is what Vaughn's sedentary job as claims manager involved.  During the FCE, Vaughn demonstrated that she can exert up to 20 pounds of force occasionally (defined as 1/3 of the work day), and/or up to 10 pounds of force frequently (defined as 1/3 to 2/3 of the work day), and/or a negligible amount of force constantly (defined as 2/3 to the full work day).  (Fortis-0228, 0233).  Vaughn demonstrated that, among other things, she could sit, stand, and walk frequently; reach above her shoulder height; perform work with arms overhead while standing; work bent over – standing/stooping; climb stairs; and work kneeling/squatting/crouching on an occasional basis; and perform reaching at or below the waist.  (Fortis-0228, 0233).

On July 14, 2004, counsel for Vaughn requested that Union Security provide the results from the FCE to Dr. Lott for his review and comment.  (Fortis-0196).  Union Security sent Dr. Lott the FCE results on July 27, 2004 for his review and comment.  (Fortis-0170 and 0177).  On September 21, 2004, Union Security followed up with Dr. Lott stating that it had not received any comments from him as to the FCE and that, in the event that Union Security did not receive any comments from him in the next thirty days, then Union Security would proceed with its decision on Vaughn's claim.  (Fortis-0166).

Vaughn's counsel did provide Union Security with a transcript from the deposition

of Dr. Lott (Vaughn's treating physician) that was taken in a lawsuit arising out of the March 3, 2001 automobile accident.  (Fortis-0088-0164).  In his August 4, 2004 deposition, Dr. Lott testified that he thought Vaughn was still disabled.  (Fortis-0123-0126).

The Appeal Committee met on December 8, 2004 to review Vaughn's claim. (Fortis-0036-0037).  The Committee requested more information, including a consulting physician review, updated pharmacy records, the status of Vaughn's Social Security claim, and any medical records submitted to the Social Security Administration that had not been submitted to Union Security.  (*Id*.).

On December 27, 2004, counsel for Vaughn responded to Union Security's request for further information by stating that Vaughn had been awarded Social Security benefits and that Union Security had all the same medical records that had been submitted to the Social Security Administration.  (Fortis-0028).  Vaughn filed this lawsuit on December 29, 2004.

On February 1, 2005, Union Security had an independent, consulting physician (Jesse Cheng, M.D.) review the file.  Dr. Cheng concluded that Vaughn was capable of at least "light" work.  (Fortis-0008-0014).  Again, "light" work is more strenuous than sedentary work.   (Fortis-0225).

The Appeals Committee reconvened on February 11, 2005 to review Vaughn's claim and make a final decision on the ERISA administrative appeal.  (Fortis-0005).  The

Committee upheld the denial of benefits for a physical disability.  (*Id*.).  Union Security

sent counsel for Vaughn a letter dated February 15, 2005 containing the final denial of

Vaughn's appeal.  (Fortis-0002-0004).  Excerpts from the letter are below:

> The maximum twenty-four months of benefits have previously been paid based on [Vaughn's] psychiatric condition . . . The Committee's review focused on whether [Vaughn] is limited from working at her occupation based on a physical condition. The Committee concluded she is physically capable of performing her occupation of Manager, and no further benefits are payable.  The policy's Occupation Test, as well as the vocational and medical information in file, was all considered, as follows:
>
> *        *        *
>
> Ms. Vaughn, when she ceased working, was employed by Blue Cross/Blue Shield as a Claims Manager.  This job falls within the occupation of Manager, which has the following material duties . . .
>
> 1.   Be able to work for an employer on a full time basis as defined in the policy.
> 2.   Plan, direct, and coordinate activities of a department, area or function of an organization.
> 3.   Review, analyze and/or prepare financial and activity reports, budgets, or other information.
> 4.   Plan, develop, interpret, and/or implement policies, procedures, objectives and goals.
> 5.   Analyze and resolve problems.
> 6.   Confer with management and other administrative personnel.
>
> The Committee then examined the medical evidence to determine whether Ms. Vaughn has limitations from a physical condition that are severe enough to prevent her from any of these material duties.  They concluded that she is capable of full time work in a light category, and would be capable of performing all of the material duties of a Manager.
>
> The following medical evidence was reviewed in making this determination:
>
> 1.   Greystone Imaging Center, 5/25/01

2.      Trey Lott, M.D., D.C., 12/1/97 – 1/14/04
3.      CVS/Revco Pharmacy, 2/5/01 – 7/4/03
4.      Dr. Richard Ince, Ph.D., 7/15/01 – 8/28/01 and 10/1/01-4/19/02
5.      Margaret Pittenger (physical therapist), 6/26/01 – 10/12/01
6.      Judy McDanal, M.D., 11/19/01 – 3/27/02
7.      Virginia Campbell, M.D., 7/2/02 to 12/27/02
8.      ErgoScience (functional capacity evaluation), 7/7/04

Other reviews in file include:

1.      Patricia Neubauer, Ph.D., a Fortis staff psychologist who reviewed
        the file on 11/14/01 and 5/19/03
2.      Craig Heligman, M.D., a Fortis consulting physician who is board
        certified in occupational and environmental medicine and reviewed
        the file on 3/31/03
3.      Daniel Zimmerman, M.D., a Fortis consulting physician who is also
        an internist, and who reviewed the file on 9/11/03
4.      Jesse Cheng, M.D., a Fortis consulting physician who is board
        certified in internal medicine and preventive medicine in the
        specialty of occupational medicine, and who reviewed the file on
        2/1/05
5.      Brad Goodman, M.D., an independent medical examiner with
        Alabama Orthopedic & Spine, whose report is dated 2/2/04

The Committee also reviewed the deposition for Dr. Lott taken in the case Vaughn
v. Smith [arising out of the automobile accident].

The Committee noted that Ms. Vaughn was determined by the 7/7/04 functional
capacity evaluation to be performing at a light work capacity.  Also, Dr. Goodman
on 2/2/04 gave her 6% impairment rating of the cervical and lumbar regions.  Dr.
Goodman also noted that he would not restrict her from physical activity.  He
stated "her functional limitations are more psychological in nature, in that by her
history she has poor ability to manager [sic] her pain."  He noted she is able to
operate a motor vehicle and is independent in all other activities of daily living . . .

*      *      *

In addition, Dr. Cheng viewed a video surveillance tape, which depicted [Vaughn]
in the period of 5/2/04 – 5/7/04.  She was observed driving on several occasions
for 20-30 minute intervals, and could sit in the vehicle while reading a book while
waiting to pick up her children, even though Ms. Vaughn reported that any

18

prolonged sitting is intolerable.  She was also observed standing straight in a grocery store, bending over and lifting computer equipment . . . and walking over and opening the door while carrying the equipment, even though she reported total body pain.  Dr. Cheng concluded that the activity on the video surveillance supports that [Vaughn] can perform at a light work level, full time.

The Committee therefore concluded that based on the available medical evidence, [Vaughn] is physically capable of performing the material duties of her occupation, and does not meet the policy's Occupation Test.

Please note that additional information, in the form of updated pharmaceutical records, a missing deposition page, and any records that may have been submitted to Social Security but not to Fortis Benefits, was requested in our letter of 12/8/04.  You stated Fortis has all the records that SSA has, and we are able to obtain the missing deposition page from the court [sic].  You indicated no intent to supply the pharmacy records or any other additional documents.  Our vendor was unable to obtain them without a specific authorization; therefore, they were not part of this review.  However, please note that the policy does state, in the "Filing a Claim" section, that:

> You must furnish whatever items we decide are necessary as proof of loss or to decide our liability.  You must authorize the sources of medical and dental services to release your medical information.  If you do not furnish any required information or authorize its release, we will not pay benefits.

For the reasons stated above, the Committee concluded that no further benefits are payable. . . .

(Fortis-0002-0004).

## III.   Discussion

A.   ERISA Standard of Review

As a threshold matter, the court must determine the appropriate standard for reviewing Union Security's denial of Vaughn's claim for LTD benefits because ERISA does not specify the standard applicable to the decisions of a plan fiduciary.  *See Hunt v. Hawthorne Assoc.,*

*Inc.*, 119 F.3d 888, 912 (11th Cir. 1997).  In *Firestone Tire & Rubber Co., v. Bruch,* 489 U.S. 101 (1989), the Supreme Court held that a denial of benefits should be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  Consistent with *Firestone*, the Eleventh Circuit has adopted three standards of review for plan interpretations: (1) *de novo*, applicable if the plan fiduciary is <u>not</u> afforded discretion, (2) arbitrary and capricious when the plan grants discretion, and (3) heightened arbitrary and capricious where there is a conflict of interest.  *See, e.g.,  Paramore v. Delta Air Lines Inc.*, 129 F.3d 1446 (11th Cir. 1997).

The policy in this case grants to Union Security discretionary authority in unambiguous terms.  The Policy states as follows:

> We [Union Security] have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy.  All determinations and interpretations made by us are conclusive and binding on all parties.

(Fortis-0355).  When a plan grants discretionary authority, the deferential arbitrary and capricious standard of review is applied to a court's review of the decision.  *See Firestone*, 489 U.S. at 115.  Under the deferential type of review, a court is limited to determining whether the decision was reasonable based on the information known to the plan at the time the decision was made.  *See Buckley v. Metropolitan Life Ins. Co.*, 115 F.3d 936, 941 (11th Cir. 1997); *Shannon v. Jack Eckerd Corp.*, 113 F.3d 210 (11th Cir. 1997); *Paramore*, 129 F.3d at 1451.  A decision is arbitrary and capricious only when

20

there is no reasonable basis for it.  *Shannon*, 113 F.3d at 210.

Because Union Security is the decision maker and underwrites benefits that are owed under the plan, the modified or heightened arbitrary and capricious standard of review applies.  *See Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir. 2003).  The method of reviewing a claim denial under the heightened arbitrary and capricious standard was explained in *HCA Health Services. of GA, Inc. v. Employer's Health Ins. Co.,* 240 F.3d 982 (11th Cir. 2001).  The Eleventh Circuit in *HCA* identified a five-step test for determining whether a plan's decision should be affirmed.  Under this test, the court looks to:  (1) whether discretionary authority exists under the terms of the plan, (2) whether the decision was "wrong" even under the *de novo* standard of review, (3) whether the decision was reasonable, (4) whether the decision maker is operating under a conflict of interest and if so, (5) whether the decision maker can prove that its interpretation was not tainted by self interest.  *Id*.

B.     Union Security's Decision Was Correct

Union Security does not dispute that Vaughn was limited and may still be limited by her <u>psychiatric</u> condition (PTSD arising from her March 3, 2001 automobile accident). However, Union Security's policy only provides for two years of benefits for disabilities based on mental illness.  (Fortis-0352).  Union Security paid Vaughn benefits for two years for her mental illness disability (September 7, 2001 to September 6, 2003).  (Fortis-0446-0453).  Vaughn also claims that she had a physical condition that prevents her from

working.

The following evidence in the administrative record supports Union Security's decision to deny Vaughn's claim based on her alleged physical disability:

1.      The independent Functional Capacity Evaluation determined that Vaughn can perform at the "light duty" work capacity, (Fortis-0224-0225), which is even more strenuous than Vaughn's sedentary job as claims manager.

2.      Surveillance showed Vaughn running to her car, lifting and carrying office equipment, driving for twenty to thirty minute intervals, sitting in her car while reading a book, grocery shopping, and carrying groceries.  (Fortis-0001; Fortis-0224-0225).

3.      Brad Goodman, M.D., who performed an Independent Medical Examination, stated that he would not <u>physically</u> restrict Vaughn and that "[h]er functional limitations are more psychological in nature."  (Fortis-0197-0199).

4.      Jesse Cheng, M.D., an independent, consulting physician, concluded that Vaughn was capable of at least "light" work.  (Fortis-0008-0014).

5.      Craig Heligman, M.D., concluded that "[t]he available medical information supports the conclusion that the claimant would be able to meet the physical demands of her sedentary occupation."  (Fortis-0487).

6.      Daniel Zimmerman, M.D., an independent, consulting physician concluded that Vaughn "is capable of sedentary work activity considering only medical diagnoses (not psychiatric diagnoses) eight hours per day, five days per week, i.e., on a full time

basis." (Fortis-0412-414).

Vaughn's treating physician, Dr. Trey Lott, has stated that he thinks that Vaughn is physically disabled. However, Union Security is free to credit reliable evidence that conflicts with a treating physician's evaluation; there is no requirement that special weight must be accorded to the opinion of a treating physician. *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). Further, Union Security did not arbitrarily reject Dr. Lott's opinion. The evidence shows that Union Security considered Dr. Lott's opinion but found that it was inconsistent with other reliable evidence in the claim file, as listed above.

Vaughn also has cited her award of disability benefits from the Social Security Administration (SSA). As with the opinion of a treating physician, an award of benefits by the SSA is not dispositive of whether an individual is disabled under the terms of an insurance policy. *Paramore*, 129 F.3d at 1452. For one thing, the standards for an award under an insurance policy often differ from the standards for an award by the SSA. Further, Vaughn's Social Security award was not submitted to Union Security. Therefore, it was not part of the administrative record, and for that matter, is not even part of the evidentiary record on Union Security's Motion for Summary Judgment. In any event, the overwhelming evidence in the claim file conclusively demonstrates that Vaughn is not physically limited from performing her sedentary occupation. In sum, the court finds that Union Security's decision in denying Vaughn's claim for LTD benefits

based on her alleged physical disability was correct.

In addition, the court finds that Union Security's decision was reasonable and not tainted by self-interest.  The evidence noted above demonstrates that Union Security's decision was reasonable.  As to the self-interest analysis, the court will consider whether Union Security obtained input from independent sources (such as IMEs, FCEs, and consulting physician reviews) and whether Union Security considered all of the evidence in the file or if it ignored any evidence.  *E.g., Fick v. Metropolitan Life Ins. Co.*, 347 F. Supp. 2d 1271, 1286-87 (S.D. Fla. 2004); *see also Brown v. Blue Cross Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566-67 n.11 (11th Cir. 1990).  The court will also consider whether Union Security's decision benefited the class of participants in the Blue Cross LTD plan as a whole.  *HCA*, 240 F.3d at 994-95.

As set out above, Union Security considered all of the information contained in the claim file, including evidence submitted by Vaughn and statements by Vaughn's treating physician.  Union Security had its own in-house specialists review the medical records. Union Security also asked two independent, consulting physicians to review Vaughn's records and render an independent opinion as to whether Vaughn was physically disabled. Union Security further requested and reviewed surveillance as well as a Functional Capacity Evaluation of Vaughn performed by an independent evaluator located in Birmingham, Alabama.  Union Security also considered Vaughn's Independent Medical Exam, which Vaughn's counsel submitted.

24

Additionally, Union Security's denial of Vaughn's claim benefits the class of participants in the Blue Cross LTD plan as a whole in that it protects plan assets and keeps the amount of premiums down.  If Union Security paid claims such as Vaughn's that were not entitled to benefits under the terms of the LTD policy, then premiums would have to be raised and plan assets would be jeopardized.  The current premium amount and the amount of plan assets contemplate that only valid LTD claims will be paid.

In summary, the court finds that Union Security's decision was correct, reasonable, and not tainted by self-interest.

**IV.    Conclusion**

Based on all of the foregoing, defendant Union Security Insurance Company's motion for summary judgment is due to be granted, and all of plaintiff Mary Vaughn's claims will be dismissed with prejudice.  An appropriate order of dismissal will be entered contemporaneously herewith.

**DONE** this the 8th day of August, 2006.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE